# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

ROBERT ALLEN LONG, JR.,      )
                                       )
      Plaintiff,             )
                                       )     Case No. 3:13-cv-1276
v.                                 )     Senior Judge Haynes
                                       )
COUNTY OF MONTGOMERY, TN,    )
JOHN SMITH, Sheriff of Montgomery   )
County, and DEBORAH CAMACHO,    )
                                       )
      Defendants.          )

## MEMORANDUM

Plaintiff, Robert Allen Long, Jr., filed this action under 42 U.S.C. § 1983 against the Defendants: Montgomery County, Tennessee; John Smith, its Sheriff; and Deborah Camacho, a deputy sheriff. Plaintiff asserts Fourteenth Amendment claims arising out of his injuries as a pretrial detainee at the Montgomery County jail. Plaintiff also asserts pendent state law claims under the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. §§ 29-20-101 et seq.

Before the Court is Defendants' motion for summary judgment (Docket Entry No. 45) contending that the undisputed facts do not support Plaintiff's claims. Plaintiff filed his opposition. (Docket Entry Nos. 53-55).

For the reasons set forth below, the Court concludes that there are not any material factual disputes and Plaintiff's proof cannot support a judgment on his federal claims. Absent a federal claim, Plaintiff's state law claims should be dismissed without prejudice.

## A. Findings of Fact[1]

On the evening of October 21, 2012, Plaintiff Long who was then 55 years old, was arrested at his residence in Montgomery County, Tennessee for domestic assault and was taken to the Montgomery County Jail. At approximately 10:20 p.m. Plaintiff underwent a medical screening, and alerted the jail's medical staff of his heart disease, hypertension, and epileptic seizures as well as his prescribed medications: Dilantin, Elavil, Snythroid, Ambien, Xanax, hydrocodone, and four unknown blood pressure medications. Plaintiff refused to take a tuberculosis skin test and the jailers assigned him to the medical housing pod. The medical screening form did not list any medical restrictions. Plaintiff received a pillow, mattress, bedding and hygiene items. Under jail procedure, the inmate must carry these items to his cell. Plaintiff carried the pillow and bag and dragged the mattress to his cell without incident. Plaintiff was released the next morning.

Prior to his release, Defendant Camacho, who was to escort him from his cell for his release, instructed Plaintiff to collect his belongings and follow her to the booking area. Plaintiff initially gathered all items except the mattress. Defendant Camacho then instructed Plaintiff to bring his mattress, and Plaintiff then began to drag the mattress. Defendant Camacho then instructed Plaintiff to pick up the mattress off the ground, and Plaintiff protested, citing his heart problems and his disability. According to Plaintiff, Defendant Camacho requested written proof of his disability, but Plaintiff had no such proof. Defendant Camacho then told Plaintiff if he did not carry the mattress,

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery, Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The Court concludes that there are not any material factual disputes. Thus, this section constitutes finding of facts.

he would not be released. Plaintiff considered Defendant Camacho's statement to be a threat and complied. Plaintiff now asserts that he suffered a back injury due to carrying the mattress, but he did not alert his jailers to any injury.

After his release, Plaintiff sought medical treatment for his back pain. Thereafter, Plaintiff twice visited the Montgomery County Sheriff's Office to complain about the effects of his being required to carry the mattress to secure his release. According to Plaintiff, a jail staff member told him that Defendant Camacho would be reprimanded. Plaintiff's attorney sent two letters to the Sheriff's Office detailing Plaintiff's complaint and requesting an investigation, as well as information about the incident. Plaintiff states that the Sheriff's Office did not respond to either letter.

Plaintiff identifies the Jail's policy of forcing inmates to carry their mattresses and asserts that Defendant Camacho enforced that policy causing his injury. Plaintiff contends that this policy is arbitrary and contrary to the Tennessee Corrections Institute ("TCI") standard for pretrial detainees. Under the pertinent TCI standard, pretrial detainees "shall not be required to work, except to do personal housekeeping." Plaintiff cites his medical information disclosed at his initial screening as providing Defendants ample information of his disabling health conditions that the Defendants deliberately disregarded.

## B. Conclusions of Law

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 Advisory Committee Notes. Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come

forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989); see also Routman, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

4

Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Sixth Circuit explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex, 477 U.S. at 322 and Rule 56(e)).

Once the moving party meets its initial burden, the Sixth Circuit warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion . . . [and] must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby, 477 U.S. at 251, 255). Moreover, the Sixth Circuit explained that

[t]he respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted); see also Hutt v. Gibson Fiber Glass Prods., 914 F.2d

790, 792 (6th Cir. 1990) (quoting Liberty Lobby, 477 U.S. at 151-52) ("A court deciding a motion

for summary judgment must determine 'whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

law.'").

If both parties make their respective showings, the Court then determines if the material

factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.

* * *

> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict</u> -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citations omitted and emphasis added).

It is likewise true that

> [i]n ruling on motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.

6

It has been stated that: "The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute . . . ."

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Sixth Circuit stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d. 43, 46 (6th Cir. 1986) (citation omitted).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of."
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (citation omitted). In this district, the parties must provide specific references to the proof upon which they rely. See Local Rule 56.01(c) (requiring each party to provide a statement of undisputed facts to which the opposing party must respond).

In <u>Street</u>, the Sixth Circuit discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, <u>i.e.</u>, the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that

there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) whether the moving party "clearly and convincingly" established the absence of material facts; (2) if so, whether the plaintiff presents sufficient facts to establish all the elements of the asserted claim or defense; (3) if factual support is presented by the nonmoving party, whether those facts sufficiently plausible to support a jury verdict or judgment under the applicable law; and (4) whether there any genuine factual issues with respect to those material facts under the governing law.

For his Section 1983 claims against the Defendant Smith, Montgomery County's Sheriff, Plaintiff must present proof that Defendant Smith was personally involved in some manner in the alleged unconstitutional conduct. Miller v. Calhoun Cnty., 408 F.3d 803, 817 n.3 (6th Cir. 2005); Hardin v. Straub, 954 F.2d 1193, 1196 (6th Cir. 1992). Plaintiff lacks any such proof. To the extent Defendant Smith is sued in his official capacity claims, these claims are actually against Montgomery County. See Kentucky v. Graham, 473 U.S. 159, 166 (1985); Pusey v. City of Youngstown, 11 F.3d 652, 657 (6th Cir. 1993).

As to his claims against Defendant Smith in his official capacity and Defendant Camacho, Plaintiff, as a pretrial detainee, has a Fourteenth Amendment right to be protected from excessive force and punishment, Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015), but such acts must be with an "expressed intent to punish" or acts that are not "rationally related to a legitimate

9

nonpunitive governmental purpose" or that "appear excessive in relation to that purpose," id. at 2473 (citing Bell v. Wolfish, 441 U.S. 520, 538, 561 (1979)). To recover for a violation of this right, Plaintiff must show that the acts were "objectively unreasonable." Id.

The cited policy at issue is requiring all inmates at the Jail to carry their mattresses to and from their cells. Montgomery County's policy is justified by its "staff and budget resources." (Docket Entry No. 49, Tackett Affidavit at ¶ 5). Plaintiff argues that the Jail's policy conflicts with the Tennessee Corrections Institute ("TCI") rule that "pretrial detainees shall not be required to work, except to do personal housekeeping." (Docket Entry No. 55 at 8-10). A prison official's failure to comply with state policy alone does not prove a constitutional violation. Black v. Parke, 4 F.3d 442, 448 (6th Cir. 1993); Barber v. City of Salem, Ohio, 953 F.2d 232, 240 (6th Cir. 1992).

Moreover, the Court concludes that Plaintiff's proof does not qualify as work. There is not any evidence that this policy is objectively unreasonable or intended to punish inmates. Although Plaintiff told Defendant Camacho of his disability, the undisputed fact is that Plaintiff had not been issued a written medical restriction while at the Jail. There is no evidence that Defendant Camacho was involved in the medical screening of Plaintiff that occurred upon his commitment to the Jail. Given the cited policy, Defendant Camacho's request for proof of Plaintiff's medical restriction is not objectively unreasonable. As reflected by Plaintiff's proof, upon production of a written medical restriction, Plaintiff could have been excused from this policy. Thus, assuming the timeliness of Plaintiff's claims against Defendants Smith and Camacho, the Court concludes that Defendants Smith and Camacho are entitled to summary judgment.

As to Plaintiff's state law claims under the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code. Ann. §§ 29-20-101 et seq., as a general rule, this Court, as a matter of

10

comity, declines to entertain claims under TGTLA. <u>Beddingfield v. City of Pulaski</u>, 861 F.2d 968, 972 (6th Cir. 1988). In any event, without a federal claim, the Court lacks jurisdiction to consider Plaintiff's state law claims. <u>Wal-Juice Bar, Inc. v. Aleut</u>, 899 F.2d 1502, 1504 (6th Cir. 1990).

Accordingly, the Court concludes that Defendants' motion for summary judgment (Docket Entry No. 45) should be granted, but without prejudice to Plaintiff's state law claims

An appropriate Order is filed herewith.

**ENTERED** this the _____ day of February, 2016.

WILLIAM J. HAYNES, JR.
Senior United States District Judge

11